IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-41119
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE JESUS LOPEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(M-97-CR-58-1)
_____

February 23, 1999

Before KING, Chief Judge, REAVLEY and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Jose Lopez pled guilty to conspiracy to possess with the intent to distribute marijuana and was sentenced to sixty months' imprisonment. Lopez appeals, arguing that the district court erred in enhancing his sentence for obstruction of justice and in refusing to depart from the statutory minimum. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 1997, the United States Customs Service discovered marijuana concealed in the interior walls of a tractor

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

trailer at a port of entry from Mexico. The agents did not remove the marijuana, and they followed the tractor trailer as Neri Garcia drove it to Jose Lopez's residence in Mission, Texas on February 3, 1997. Lopez's wife, Sara Lopez-Peregrina (Sara Lopez), drove Garcia to his residence while the trailer remained at Lopez's residence.

On February 4, 1997, agents observed Lopez and Sara Lopez's brother, Gilberto Peregrina, work on the air conditioning unit of the trailer for several hours. Upon completion, Peregrina boarded the trailer and agents heard him dismantling the trailer's inner walls. Lopez claims that he returned to the house and asked his wife to take a glass of water to Peregrina in the trailer. The agents claim that Lopez was in the vicinity of the trailer when Sara Lopez approached it, and they observed Sara Lopez board the trailer and place packages of marijuana in large plastic bags. The agents state that, after inspecting the trailer, Lopez entered his residence, followed by Sara Lopez and, shortly thereafter, Peregrina.

Lopez consented to the agents' search of his property, which revealed 159 kilograms of marijuana on the floor of the trailer and another 167 kilograms still hidden in the trailer's interior walls. Lopez, Sara Lopez, and Peregrina were taken into custody. In post-arrest statements, Jose and Sara Lopez indicated that Garcia had agreed to pay them to remove and store the marijuana. Peregrina told agents that he had been recruited by Lopez.

2

On April 7, 1997, Lopez agreed to plead guilty to conspiracy to possess with the intent to distribute more than 100 kilograms but less than 1000 kilograms of marijuana. Lopez also provided substantial assistance to the government and agreed to testify against Garcia. The government agreed to recommend at sentencing that Lopez was a minor participant, that he should receive maximum credit for acceptance of responsibility, and that he should receive a sentence at the low end of the applicable guideline.

During Lopez's rearraignment hearing before Judge Hinojosa the following day, the government stated that Sara Lopez assisted in the dismantling and removal of marijuana from the false compartment in the trailer. Lopez responded that Sara Lopez was not included in the criminal enterprise and that she had only taken water to the trailer. The district court told Lopez that it "suspect[s] the other co-defendants are going to testify differently, so you had better . . . tell the truth" in future testimony or the court would deny any motion to depart at sentencing.

Lopez testified at Sara Lopez's jury trial, also before Judge Hinojosa, on May 9, 1997. Lopez stated that Garcia had brought the trailer to his house and asked him to repair the trailer's refrigeration unit two days before Lopez's arrest.[1]

_____

[1] Lopez was arrested on February 4, 1997. Government agents following the trailer reported that the trailer was driven to Lopez's residence on February 3, 1997 and that the refrigeration unit was repaired on February 4, 1997. Although Lopez offered inconsistent testimony as to the chronology of these events (and

3

Lopez testified that he and Sara Lopez met with Garcia on the following day and that Garcia told them there was marijuana in the trailer and offered Lopez $5000 to remove its interior walls. Lopez testified that his wife asked him to not accept Garcia's offer and that he refused it. Lopez testified that Garcia visited Lopez on the following day and again requested that he remove the trailer's interior panels, and that he again refused. Lopez stated that on the following day, he worked on the refrigeration unit and Garcia repeated his offer. Lopez then consented to remove the walls.

Lopez testified that Garcia showed him and Peregrina how to remove the interior walls of the trailer while his wife was inside the house. Lopez testified that he returned to the house and asked his wife to take Peregrina some water when Peregrina was working inside the trailer. Lopez testified that he went outside to clean the yard and saw Sara Lopez walk to the back of the trailer, but that he did not know whether she entered the trailer. Lopez stated that she was gone between twenty and thirty minutes. Lopez testified that he did not discuss his agreement to unload the marijuana with his wife. The jury acquitted Sara Lopez of all drug-related charges.

The Presentence Investigation Report found that the total offense level under the sentencing guidelines for Lopez's conviction is twenty-one, and the probation office recommended a

his testimony was itself inconsistent), the district court did not consider this aspect of his testimony in determining that he committed perjury regarding Sara Lopez's involvement.

sentence of thirty-seven months followed by three years supervised release.[2] The probation office stated that it "ha[d] no information to suggest that the defendant impeded or obstructed justice," and that the defendant had debriefed with the government and appeared to meet the other requirements set forth in § 5C1.2 to avoid a statutory minimum sentence. See 21 U.S.C. §§ 841, 846 (providing for a minimum sentence of five years' imprisonment followed by four years of supervised release). The government filed a motion for a downward departure pursuant to § 5K1.1 based on the substantial assistance provided by Lopez during his debriefing and his agreement to testify against his co-conspirators. The government requested that the court sentence Lopez below the statutorily required minimum sentence and the authorized guideline range.

---

[2] Under § 2D1.1(a)(3), the appropriate base offense level for Lopez's conviction is twenty-six. The probation office decreased this level by two because it determined that Lopez had debriefed with the government and otherwise met the criteria set forth in § 5C1.2. See U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b)(4) (1995) (providing for a two-level decrease when defendant meets criteria set forth in § 5C1.2); U.S. SENTENCING GUIDELINES MANUAL § 5C1.2 (1995) (providing that "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" if the defendant, inter alia, "has truthfully provided to the Government all information and evidence the defendant has concerning the offense"). The probation office also reduced Lopez's offense level by three because he accepted responsibility and timely notified authorities of his intention to plead guilty. See U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (1995). The applicable guideline imprisonment range for a defendant with a total offense level of twenty-one and a criminal history score placing him in category I is thirty-seven to forty-six months. See U.S. SENTENCING GUIDELINES MANUAL Ch. 5, Pt. A (1995).

At the sentencing hearing on June 2, 1997, the district court questioned the motion for departure and stated that it had determined that Lopez lied at his wife's trial concerning her involvement in the drug offense. The government asserted that its motion was based on Lopez's assistance "in the early stages of the prosecution." The district court rejected the government's argument, however, and stated that it was considering enhancing Lopez's sentence for obstruction of justice and would not consider a motion to depart without the testimony of a customs agent assigned to the case. The court asserted that "[h]e doesn't live with Sara Lopez and not have a discussion with her about the marijuana transaction. That's not real life . . . that is not the way life is."

The government stated at a second hearing on June 19, 1997 that Garcia and his wife told the agents that Sara Lopez had offered to split $5025 with Garcia if he would help them unload the marijuana. Although the government asserted there was "a conflict in their two versions of what happened," it stated its view that there was not enough evidence to charge Lopez with perjury. A customs agent, Roy Rivera, testified as follows regarding Sara Lopez's knowledge of Lopez's agreement with Garcia:

> Mr. Rivera: Well, Sara Lopez specifically said [following her arrest] that [Garcia] was going to pay her husband the money and she knew that.
> The Court: And when you ques --
> Mr. Rivera: And she knew that she -- that her husband was going to get this money for them.
> The Court: -- and when you questioned her, this was in -- they were together or --

6

Mr. Rivera: No sir, they were separate.
The Court: You[] questioned them separately?
Mr. Rivera: And their stories were very identical, other than she basically said she had nothing to do with it and she didn't do anything at the back of the trailer.
The Court: But that she knew that her husband was getting money from Neri Garcia?
Mr. Rivera: Oh, yes, sir.
The Court: And did she indicate to you how she knew that?
Mr. Rivera: No, she didn't. Other than -- Well, yes, I'm -- she said that she knew this from her husband.

The government stated, and Rivera agreed, that it "believed that [Lopez] didn't see what Sara [Lopez] was doing in that trailer. I don't believe he was ever in a position to do that. I think where he hedged and fudged and didn't tell the truth was about Sara's involvement in the agreement to unload the trailer," and that Sara Lopez actively participated with her husband in agreeing to unload the trailer.

The district court ultimately concluded that Lopez lied in his testimony regarding his wife's knowledge of the drug transaction. On June 30, 1997, the court stated that Lopez and his wife "participated in it together" and that Lopez "knew that his wife was involved in it." The court stated that it did not "buy the story" that Sara Lopez had only gone to the trailer to bring Peregrina water. The court further stated that it did not believe Lopez's assertion that he was unable to bring Peregrina water because he had difficulty carrying objects (Lopez has an amputated leg), noting that Lopez admits he performed yard work. The court also found that Lopez's testimony that his wife was present when Garcia initially made the offer conflicted with his

7

statement during cross-examination that his wife was in the car.[3]
The court determined that Lopez's testimony was "an attempt to
exculpate her when she was involved in this transaction."

Lopez argued to the district court that the court should not
believe Garcia's testimony because Garcia testified against Sara
Lopez "to pay them back" because Lopez significantly contributed
to the government's case and had committed himself to testify
against Garcia.  The government agreed that Lopez had caused
Garcia to change his mind and plead guilty.  Nonetheless, the
district court found that Garcia's testimony of Sara Lopez's
involvement was consistent with her activities in the trailer,
and the court noted that no agent had reported seeing a glass of
water as Sara Lopez walked to the trailer.

The court found that Lopez committed perjury in his
testimony at his wife's trial.  The court then denied the
government's motion to depart and enhanced Lopez's sentence for
obstruction of justice, resulting in a total offense level of
twenty-five and a recommended sentence of fifty-seven to seventy-
one months.  The court found that the Lopez did not qualify under
§ 5C1.2 and that therefore the statutory minimum sentence of

---

[3] Specifically, Lopez testified on cross-examination as
follows:

> Q (prosecutor): And then, there came a time after [talking
>     to Garcia about repairing the refrigeration unit] when
>     you and Sara were present and he offered you $5,000 for
>     unloading the marijuana from the walls?
> A (Lopez): Yes, sir.
> Q: Okay.  So she knew there was marijuana in the trailer?
>     She was present when that took place?
> A: She was in the car.

8

sixty months applied.  The court sentenced Lopez to sixty months'
imprisonment followed by four years of supervised release.  Lopez
timely appeals.

## II. DISCUSSION

Lopez argues that the district court erred by enhancing his
sentence for obstruction of justice and refusing to disregard the
statutory minimum sentence under the safety valve provision in
§ 5C1.2.  Lopez asserts that no reliable evidence supports the
district court's finding that Lopez knew the extent of his wife's
involvement in the transaction and that its finding that he
committed perjury was therefore clearly erroneous.  Lopez further
contends that the district court failed to support the
enhancement with sufficient factual findings on the elements of
obstruction of justice.[4]

---

[4] Lopez also argues on appeal that the district court's
reliance on a Sixth Circuit case holding that obstruction of
justice during the investigation, prosecution, or sentencing of
the "instant offense" under § 3C1.1 may include false testimony
offered at a co-defendant's trial "raises retroactivity
questions" because that decision was issued after Lopez was
arrested.  See United States v. Walker, 119 F.3d 403, 406-07 (6th
Cir.), cert. denied, 118 S. Ct. 643 (1997).  We find no merit in
this argument because other circuit courts had reached the same
conclusion prior to Lopez's offense.  See United States v. Acuna,
9 F.3d 1442, 1446 (9th Cir. 1993) (applying § 3C1.1 where
defendant testified falsely regarding co-conspirator's conduct at
co-conspirator's trial); United States v. Bernaugh, 969 F.2d 858,
861 (10th Cir. 1992) ("[T]he section 3C1.1 enhancement applies
where a defendant attempts to obstruct justice in a case closely
related to his own, such as that of a codefendant.").
Furthermore, we note that a recent amendment to the sentencing
guidelines clarifies that the "instant offense" includes false
testimony at a co-defendant's trial.  See U.S. SENTENCING GUIDELINES
MANUAL § 3C1.1 & commentary (1998).

## A. Standard of Review

We review the district court's factual determination that a defendant obstructed justice under § 3C1.1 for clear error. See United States v. Gonzalez, 163 F.3d 255, 263 (5th Cir. 1998); United States v. Powell, 124 F.3d 655, 667 (5th Cir. 1997), cert. denied, 118 S. Ct. 1082 (1998). We also review the district court's refusal to apply the safety valve provision under § 5C1.2 for clear error. See United States v. Torres, 114 F.3d 520, 527 (5th Cir. 1997). "A factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole." United States v. Lowder, 148 F.3d 548, 552 (5th Cir. 1998) (quoting United States v. Cluck, 143 F.3d 174, 180 (5th Cir. 1998)). If the district court's factual determination is plausible in light of the entire record, we may not reverse it even if we are convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently. See United States v. Davis, 76 F.3d 82, 84 (5th Cir. 1996). Furthermore, "[c]redibility determinations in sentencing hearings 'are peculiarly within the province of the trier-of-fact.'" United States v. Sotelo, 97 F.3d 782, 799 (5th Cir. 1996) (quoting United States v. Sarasti, 869 F.2d 805, 807 (5th Cir. 1989)).

## B. Obstruction of Justice

Under § 3C1.1, "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense," the offense level is increased by two

levels.  The commentary to § 3C1.1 specifically provides that "committing, suborning, or attempting to suborn perjury" is conduct to which this enhancement applies.  A witness testifying under oath or affirmation commits perjury if he or she "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  See United States v. Dunnigan, 507 U.S. 87, 94 (1993).  "If a district court finds that a defendant has committed perjury at trial, an enhancement is required under section 3C1.1."  United States v. Storm, 36 F.3d 1289, 1295 (5th Cir. 1994).

We have carefully reviewed the record and cannot say that the district court's determination that Lopez committed perjury at his wife's trial was clearly erroneous.  The district court had the benefit of hearing Lopez's original testimony in his wife's trial and the contradictory testimony of other witnesses, including Garcia.  Furthermore, the district court held several sentencing hearings and sought the testimony of a customs agent assigned to Lopez's case to determine whether he lied about his wife's role in the criminal enterprise.  The court determined that Lopez's testimony was inconsistent with the customs agents' observations of Sara Lopez's activities in the trailer.  The court found Lopez's description of his wife's role implausible considering their relationship, the failure of any agents to see the water Lopez claimed she carried, and Lopez's apparent ability to perform yard work and other tasks.  Furthermore, the district

11

court was firmly convinced that Lopez intentionally (and successfully) lied about his wife's knowledge and role in the transaction.  See United States v. Garcia, 902 F.2d 324, 326 (5th Cir. 1990) (affirming obstruction of justice enhancement where, "[a]lthough the evidence concerning [the defendant's] statements about the prior arrest is conflicting, the record clearly indicates that the trial judge was firmly convinced [that he] intentionally lied about the arrest").  We therefore determine that the district court's finding that Lopez committed perjury at his wife's trial is plausible in light of the record.

Lopez argues that the district court did not include specific factual findings or language indicating that the proper factual predicates were established in support of its finding that he committed perjury at his wife's trial.  See Dunnigan, 507 U.S. at 95 ("[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice . . . under the perjury definition we have set out.").  We find no merit to this argument.  Although the Supreme Court has stated that "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding," the Court recognized that a finding of obstruction that "encompasses all of the factual predicates for a finding of perjury" is sufficient. Id. at 95; see also United States v. Como, 53 F.3d 87, 89 (5th Cir. 1995) ("A separate and clear finding on each element of the

12

alleged perjury, although preferable, is not required."). The district court considered the evidence and determined that Lopez intentionally provided false testimony regarding his wife's involvement in the criminal enterprise, thus encompassing the necessary factual predicates for its finding of perjury.

### C. The Safety Valve Provision

Section 5C1.2 provides that a court "shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" for certain offenses if the defendant, inter alia, "truthfully provide[s] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S. SENTENCING GUIDELINES MANUAL § 5C1.2 (1995). Lopez argues that he qualified under the safety valve provision and that the district court erred in refusing to depart from the statutory minimum sentence of sixty months' imprisonment.

The district court determined that Lopez did not truthfully provide all information he had concerning the criminal enterprise because he consistently minimized his wife's role and lied about her activities. Because we have already found that the district court's determination that Lopez lied about his wife's involvement is plausible in light of the record, we must similarly conclude that the district court did not clearly err by refusing to depart from the statutory minimum sentence under § 5C1.2.

13

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment and sentence of the district court.